**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RAMON LOPEZ, | ) | 3:24-CV-00225 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAPEGA, *et al.*, | ) | |
| *Defendants*. | ) | May 31, 2024 |

**INITIAL REVIEW ORDER**

*Pro se* plaintiff Ramon Lopez, a sentenced[1] inmate currently incarcerated at Cheshire

Correctional Institution, filed this action pursuant to 42 U.S.C. § 1983.  He names ten defendants:

Correctional Transport Unit ("CTU") Officer Capega, CTU Lieutenant Rodriguez, CTU Captain

Fleeting, Nurse Ortiz, Nurse Ama Serwah-Konadu, Officer John Doe, Nurse Debra Cruz, Kirsten

Shea, Colleen Gallagher, and Captain Blackstock.  He brings claims under the First, Eighth, and

Fourteenth Amendments, alleging that all Defendants were deliberately indifferent to his serious

medical needs and Defendant Cruz retaliated against him.  Plaintiff also brings a claim against

Captain Blackstock for violation of his rights under the Americans with Disabilities Act ("ADA"),

42 U.S.C. §§ 12101–12213.  Plaintiff sues Defendants in their individual and official capacities

and seeks damages and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought

by prisoners seeking relief against a governmental entity or officer or employee of a governmental

entity.  28 U.S.C. § 1915A(a).  Upon review, the Court must dismiss the complaint, or any portion

---

[1] Information on the Department of Correction website shows that Plaintiff was sentenced on December 5, 2003, to a term of imprisonment of 100 years.  *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=227089 (last visited May 31, 2024).  The Court may take judicial notice of matters of public record.  *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2]  Based on this initial review, the Court orders as follows.

## I.    FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.

The CTU is responsible for transporting inmates for court or medical appointments or for transferring inmates among correctional facilities. ECF No. 1 ¶ 18.  The CTU uses specialized vehicles that are equipped for transporting inmates, some with interior cages. *Id.* ¶ 19.  This customization reduces the seating area in the vans, affecting both leg room and space between seats. *Id.* ¶ 20.  Safety restraints, both lap-belts and shoulder-belts, must be applied by transport officers because the inmates cannot access the belts on their own. *Id.* ¶ 21.

While being transported, inmates are secured with handcuffs, ankle cuffs, a waist chain with a black box, and a tether chain. *Id.* ¶ 22.  These restraints significantly restrict the inmates' ability to move. *Id.* ¶ 23.

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

On January 4, 2023, Plaintiff had an appointment at the University of Connecticut Health Center ("UCHC").  *Id.* ¶ 27.  About 6:30 a.m., Plaintiff was in the Admissions and Processing ("A/P") Room at Cheshire Correctional Institution ("Cheshire") where Officer Capega secured him in restraints prior to transport.  *Id.* ¶¶ 28–30.  Two other inmates also were restrained prior to transport to UCHC. *Id.* ¶¶ 31–32.  All three inmates were loaded onto the transport van in the parking area adjacent to the A/P Room; no inmate was secured with safety restraints.  *Id.* ¶¶ 29, 33.

As Officer Capega was leaving the parking area, he "rapidly reversed the vehicle striking a large steel construction dumpster that was adjacent to the parking area." *Id.* ¶ 34.  Plaintiff fell from his seat and struck a portion of the security cage.  *Id.* ¶¶ 35–36.  Plaintiff's personal restraints prevented him from bracing himself for the impact or protecting his body with a defensive posture. *Id.* ¶ 37.

Plaintiff immediately experienced back, head, neck, and shoulder pain from whiplash.  *Id.* ¶ 38.  All three inmates began yelling to Officer Capega that they had been injured.  *Id.* ¶ 39. Officer Capega ignored them and drove to the back security gate of the prison.  *Id.* ¶ 40.  At that time, Officer Capega spoke with Lieutenant Rodriguez by phone and decided to return to the A/P Room to have the inmates checked by medical staff.  *Id.* ¶¶ 41–43.  A short time later, Lieutenant Rodriguez notified Captain Fleeting of the incident.  *Id.* ¶ 44.

When the inmates re-entered the A/P Room, Officer Doe stated that he had heard the crash but was not going to report it.  *Id.* ¶¶ 47–48.  All three inmates were kept in full restraints despite their complaints of pain.  *Id.* ¶ 52.

Nurses Ortiz and Serwah-Konadu were called to the A/P Room to check the inmates.  *Id.* ¶ 53.  They checked Plaintiff's blood pressure but did little else; he was not physically examined

because he remained in restraints.  *Id.* ¶¶ 54–55.  The nurses cleared the inmates for transport to UCHC.  *Id.* ¶ 57.  Plaintiff told Nurse Ortiz about the pain in his back, neck, shoulder, and head and stated that he was not comfortable going to UCHC with Officer Capega.  *Id.* ¶¶ 56, 58.  Nurse Ortiz told Plaintiff that no ambulance would be called so if he wanted medical treatment at UCHC, he had to go in the van.  *Id.* ¶ 59.

The van was not inspected before the three inmates were placed back in the van.  *Id.* ¶ 62. Again, Officer Capega did not put safety restraints on any inmate.  *Id.* ¶ 63.

Upon arrival at UCHC, Plaintiff continued to experience pain and began vomiting in the secure holding area.  *Id.* ¶ 66.  UCHC staff ordered that Plaintiff and the other inmates be taken to the emergency room where they were checked by medical staff.  *Id.* ¶¶ 67–68.  Plaintiff underwent a CT scan of his head and was scheduled for a follow-up consultation regarding his complaints of pain.  *Id.* ¶ 68.  Plaintiff alleges that he requires surgery to repair two torn ligaments in his shoulder. *Id.* ¶ 70.

After he returned to Cheshire, Plaintiff continued to complain of pain and nausea.  *Id.* ¶ 72. He was seen by Dr. Williams who prescribed medication for pain, nausea, and dizziness and advised Plaintiff to follow-up with the medical unit if his symptoms continued.  *Id.* ¶ 74.  Plaintiff remained on medication for pain and dizziness through the filing of the complaint.  *Id.* ¶ 75.

Plaintiff continued to experience pain and discomfort in his neck, back, and shoulder for weeks following the accident and continually complained about these issued to the medical unit. *Id.* ¶ 76.  In January 2023, Dr. Williams submitted a request to the Utilization Review Committee ("URC") for an orthopedic consult and an MRI.  *Id.* ¶¶ 77–78.  Plaintiff alleges that defendants Cruz, Shea, and Gallagher intervened in the URC process to delay Plaintiff's treatment and prevented him from utilizing the administrative remedy process.  *Id.* ¶ 79.

Plaintiff filed a level 1 Health Services Review ("HSR") about the accident, the inadequate treatment by Nurses Ortiz and Serwah-Konadu, and his ongoing medical treatment and continued pain. *Id.* ¶ 85. Defendant Cruz, the Health Services Review Coordinator, did not acknowledge or respond to the HSR. *Id.* ¶¶ 86–87. She denied receiving the HSR and, although she told Plaintiff he would have to start the process again, also stated that she would not permit him to file the HSR. *Id.* ¶¶ 88–89.

On February 8, 2023, during a follow-up visit in the medical unit, defendant Cruz told Plaintiff that he would not "win" his HSR and that "it was 'tough' that he wasn't getting treatment." *Id.* ¶¶ 90–91. Plaintiff finally underwent an MRI in August 2023, at which time it was determined that he required surgery. *Id.* ¶ 93.

Captain Blackstock serves as the facility's ADA administrator. *Id.* ¶ 97. Plaintiff filed a request for reasonable accommodation under the ADA seeking a medical mattress to address his shoulder, back, and neck pain. *Id.* ¶¶ 98–99. Captain Blackstock denied the request. *Id.* ¶ 102. The lack of a medical mattress has caused Plaintiff to experience difficulty sleeping; he cannot "alleviate the pain and pressure caused by the standard issue mattress." *Id.* ¶ 103.

## II.    DISCUSSION

Plaintiff asserts four claims: (1) Defendants Capega, Rodriguez, Fleeting, Doe, Ortiz, and Serwah-Konadu were deliberately indifferent to his serious medical needs; (2) Defendants Cruz, Shea, and Gallagher were deliberately indifferent to his serious medical needs; (3) Defendant Cruz retaliated against Plaintiff for using the administrative remedy procedures; and (4)[3] Captain Blackstock prevented Plaintiff from receiving reasonable accommodations for his ongoing medical needs in violation of the Eighth Amendment and the Americans with Disabilities Act.

---

[3] Plaintiff captions this claim as a second count three.

A. <u>Official Capacity Claims</u>

Plaintiff's complaint indicates that he asserts his claims against Defendants in their official capacities. To the extent he asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, the Court considers only whether Plaintiff has sufficiently alleged claims against any defendant in his or her individual capacity for damages.

Plaintiff also seeks injunctive relief. Plaintiff may proceed for injunctive relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)).

Plaintiff seeks injunctive relief in the form of medical treatment for the injuries sustained in the accident that is the subject of this action. As the request appears narrowly tailored to address only the issues in this action, Plaintiff's request for injunctive relief will proceed against Defendants against whom he has plausibly alleged claims for deliberate indifference to medical needs in their official capacities.

B. <u>Personal Involvement</u>

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983.") (citation omitted). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Plaintiff alleges that Officer Capega informed Lieutenant Rodriguez, who in turn informed Captain Fleeting, about the accident and that, after speaking to Lieutenant Rodriguez, Officer Capega returned to the facility. Plaintiff does not allege that Lieutenant Rodriguez and Captain Fleeting were present when they returned. Separately, Plaintiff also alleges that Defendants Shea and Gallagher were medical supervisors. He does not allege that either defendant treated him or reviewed his medical complaints.

Lieutenant Rodriguez, Captain Fleeting, Shea, and Gallagher are supervisory officials. The Second Circuit has held that "there is no special rule for supervisory liability." *Id.* at 618. Prior to *Tangreti*, a supervisory official could be found liable for failing to remedy a wrong after becoming aware it had occurred. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (listing five factors, of which this is the second, to establish supervisory liability). After *Tangreti*, however, this manner of establishing supervisory liability is no longer available. *See Stone #1 v. Annucci*, No. 20–CV–1326(RA), 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021) (noting district courts' rejection of *Colon* factors, including the second factor, after *Tangreti*). Mere awareness of an issue is no longer sufficient to state a claim for supervisory liability. *Tangreti*, 983 F.3d at 616–17 ("A supervisor's 'mere knowledge ...' is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution.") (quoting *Iqbal*, 556 U.S. at 677).

Plaintiff cannot hold Lieutenant Rodriguez and Captain Fleeting liable for failing to contact the state police regarding the accident or failing to call an ambulance for the inmates. These actions

fall into the category of failing to remedy a wrong after learning of it, a category of supervisory liability no longer available after *Tangreti*.

Regarding Defendants Shea and Gallagher, Plaintiff merely alleges in conclusory fashion that they "intervened in the URC process to delay the plaintiff receiving treatment" and "prevented him from pursuing administrative remedies regarding his ongoing medical issues from the vehicular crash incident . . .." *See* ECF. No. 1 ¶ 79.  The Court is not required to accept conclusory allegations or legal conclusions alleged as facts.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555).

 For these reasons, the supervisory liability claims against Defendants Rodriguez, Fleeting, Shea, and Gallagher are dismissed.

C.  <u>Eighth Amendment</u>

Plaintiff asserts three claims for deliberate indifference to his serious medical needs against the remaining defendants: (1) Defendants Capega, Doe, Ortiz, and Serwah-Konadu were deliberately indifferent to his serious medical needs by failing to provide medical care at Cheshire immediately after the accident or calling an ambulance to transport him to the hospital; (2) Defendant Cruz delayed access to medical care following his return to Cheshire from the hospital; and (3) Defendant Blackstock failed to provide him a medical mattress.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation omitted).  Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S.

97, 104–05 (1976).

A claim for deliberate indifference to medical needs is comprised of objective and subjective elements.  Objectively, the plaintiff must allege a "sufficiently serious" medical condition.  *Spavone,* 719 F.3d at 138 (citation omitted).  To determine whether a condition is "serious," courts consider whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).  Subjectively, the plaintiff must allege that the defendant "knew of and disregarded the plaintiff's serious medical needs."  *Id.* at 703.  This culpable mental state exceeds mere negligence and is akin to criminally reckless intent.  *See Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994); *Zafrin v. Department of Corr.*, No. 3:22–cv-1339 (KAD), 2023 WL 8653940, at *5 (D. Conn. Dec. 14, 2023).  In addition, a disagreement over the treatment provided does not show deliberate indifference.  *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (summary order) (citing *Chance*, 143 F.3d at 703); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment .... [T]he essential test is one of medical necessity and not one simply of desirability." (internal quotation marks and citation omitted)).

### 1.  Defendants Capega, Doe, Ortiz, and Serwah-Konadu

Plaintiff alleges that Defendants Capega, Doe, Ortiz, and Serwah-Konadu failed to provide him medical care at Cheshire following the accident.  Officers Capega and Doe are correctional officers, not medical providers.  To state a claim against them, Plaintiff must "prove that [nonmedical] prison personnel intentionally delayed access to medical care when the inmate

was in extreme pain and has made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment." *Roundtree v. City of New York*, No. 15-CV-8198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018) (internal quotation marks and citation omitted).

Plaintiff alleges that he immediately complained to Officer Capega of severe pain. However, Officer Capega did not immediately bring the inmates back inside the facility to be checked. Instead, he did so after speaking to his supervisor. Based on these allegations, the claim against Officer Capega will proceed for further development of the record.

Officer Doe was inside Cheshire. The only allegation against him is that he claimed to have heard the van strike the dumpster but said he would not report the incident. While this allegation could support a claim for negligence, it does not show that Officer Doe knew or should have known of Plaintiff's injuries immediately following the accident. The claim against Officer Doe is therefore dismissed.

Defendants Ortiz and Serwah-Konadu are nurses. They came to the A/P room and conducted a cursory examination of the inmates; they did not examine Plaintiff in response to his claims of severe pain. This allegation suggests their actions were more than merely negligent. The claims against Defendants Ortiz and Serwah-Konadu also will proceed for further development of the record.

### 2. Nurse Cruz

Plaintiff contends that Nurse Cruz delayed or denied medical care by her refusal to accept and process his HSRs. He further alleges that she told him that any refiled HSR would not be granted and "it was 'tough' that he wasn't getting treatment." ECF No. 1 ¶ 91. Although Plaintiff has no constitutional right to have a grievance processed, *Schlosser v. Manuel*, No. 3:19-cv-1444

(SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020), this allegation shows that Nurse Cruz acted specifically to deny Plaintiff medical treatment. As Nurse Cruz appears to have understood Plaintiff's need for treatment but acted to deny that treatment, the claim against her will proceed for further development of the record.

### 3.  *Captain Blackstock*

Plaintiff claims that Captain Blackstock was deliberately indifferent to his medical needs because he denied Plaintiff's request for a medical mattress. Plaintiff alleges that he referred Captain Blackstock to the accident and his medical files to justify his request for a medical mattress. ECF No. 1 ¶ 101. He does not allege, however, that any medical provider recommended a medical mattress to address his condition. Plaintiff now alleges that because the request was denied, he "has difficulty sleeping due to his inability to alleviate the pain and pressure caused by the standard issue mattress." *Id.* ¶ 103.

As Captain Blackstock is not a medical provider, this claim is more appropriately considered as a challenge to conditions of confinement. *See Raynor v. Feder*, No. 3:20-cv-1343 (SVN), 2023 WL 6295647, at *8 (D. Conn. Sept. 27, 2023) (considering deliberate indifference to medical needs claim against correctional staff for failing to provide therapeutic mattress as claim for unconstitutional conditions of confinement). To prevail, Plaintiff must present evidence demonstrating "an objective component—that the deprivation 'was sufficiently serious that he was denied the minimal civilized measure of life's necessities'—and a subjective component—that the defendant[] 'acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety.'" *Id.* (quoting *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order)).

The objective component requires the court to "assess whether society considers the risk

that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).  Courts have found that "the condition of a prisoner's mattress may be so inadequate as to constitute an unconstitutional deprivation." *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013).  Thus, for purposes of initial review only, the Court will assume that Plaintiff plausibly alleges the objective component of the test.

The subjective component requires Plaintiff to show that Captain Blackstock knew that he faced a substantial risk to his health and disregarded that risk.  *See Phelps v. Kapnolas*, 308 F.3d 180, 185–86 (2d Cir. 2002) (defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of harm exist[ed]" and have also "draw[n] th[at] inference") (citation omitted).  Plaintiff alleges only that he referred Captain Blackstock to the fact that he had been in a motor vehicle accident and his medical records of treatment following the accident. Plaintiff does not allege that the medical records, however, recommended a medical mattress. Thus, absent a medical recommendation, it is not clear that Captain Blackstock would have understood that denying a medical mattress would have subjected Plaintiff to a substantial risk of harm.  The Eighth Amendment claim against Captain Blackstock is therefore dismissed.

D.     First and Fourteenth Amendment

Plaintiff contends that Nurse Cruz's denial of his HSR and delay of medical treatment was an act of retaliation for his utilizing the administrative remedy system.  To state a cognizable First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter,* 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted); *see also Lebron v. Thibodeau*, No. 3:22-CV-804

12

(OAW), 2023 WL 3057159, at *6 (D. Conn. Apr. 24, 2023) (applying same test to Fourteenth Amendment retaliation claim).

Filing an administrative remedy is considered a protected activity under the First and Fourteenth Amendments.  *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (citing cases); *Gill v. Pidlypchak*, 389 F.3d 379, 380–81 (2d Cir. 2004) (filing a lawsuit or grievance is constitutionally protected activity and will support a retaliation claim); *Stewart v. Ayala*, No. 3:20-CV-1938 (CSH), 2022 WL 4356467, at *8 (D. Conn. Sept. 20, 2022) (protected speech or activity includes "filing a lawsuit, an administrative complaint, or a prison grievance").  Thus, Plaintiff satisfies the first element.

The Second Circuit has defined adverse action as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012).  Whether a particular action is considered adverse depends on the circumstances.  *Id.*  (the definition of adverse action "is not static across contexts," but "must be tailored to the difference circumstances in which retaliation claims arise.  Prisoners may be required to tolerate more than public employees . . . before a retaliatory action taken against them is considered adverse." (internal quotation marks and citation omitted)).

Although courts in this circuit have not addressed the issue, courts in other circuits have held that "[t]he denial of a grievance, standing alone, is de minimis action and insufficient to establish a claim of First Amendment retaliation."  *See Voits v. Brown*, No. 2:22-cv-01365-MC, 2023 WL 2447474, at *1 (D. Or. Feb. 23, 2023) (citing cases), *appeal dismissed*, 2023 WL 10248708 (9th Cir. Nov. 17, 2023); *see also Thurman v. Crews*, No. 4:23CV-P98-JHM, 2024 WL 386196, at *3 (W.D. Ky. Jan. 31, 2024) *appeal dismissed*, No. 24-5166, 2024 WL 2733205 (6th

Cir. Feb. 29, 2024) (denial or refusal to process a grievance does not constitute adverse action to support a retaliation claim).  Here, however, Plaintiff alleges that by denying and refusing to process his HSRs, Defendant Cruz delayed his access to medical care and was aware that she was doing so.  For purposes of initial review, the Court will assume Plaintiff's statement constitutes adverse action.  Finally, Plaintiff has alleged that his filing the HSR was the cause of Defendant Cruz's actions.

Plaintiff's retaliation claim against Defendant Cruz brought under the First and Fourteenth Amendments[4] will therefore proceed for further development of the record.

### E.   Americans with Disabilities Act

Finally, Plaintiff contends that Captain Blackstock violated his rights under the ADA, by denying his request for a medical mattress.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  To state a cognizable ADA claim, Plaintiff must establish three factors:  (1) he is a qualified person with a disability, (2) the defendants in their individual or official capacities are considered an entity subject to the ADA, and (3) he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disabilities.  *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

---

[4] Plaintiff has not distinguished between his First and Fourteenth Amendment retaliation claims.  As Second Circuit authority supports the proposition that a prisoner plaintiff may suffer retaliation in violation of both the First and Fourteenth Amendments for pursuing a grievance, *see Dolan*, 794 F.3d at 294, the Court will allow the claim to proceed past initial review under both constitutional provisions.  This decision is without prejudice to Defendants moving to dismiss this claim, or any other claims that proceed past initial review, should they believe such a motion is warranted.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[I]n assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that *substantially limit* those activities." *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) (summary order) (emphasis added) (citation omitted).

Plaintiff alleges that he experienced pain in his neck, back, and shoulder following the accident. He subsequently was diagnosed with torn ligaments in his shoulder. And, although he alleges that he has "difficulty sleeping," *see* ECF No. 1 ¶ 103, he does not allege that any major life activity has been *substantially limited* by his injury. Thus, Plaintiff alleges no facts suggesting that he is a qualified person with a disability.

Even if the Court were to assume that Plaintiff is a qualified person with a disability, though, his claim must be dismissed. Initially, the Court notes that the ADA applies to state prisons. *See Harris v. Brennan*, No. 3:21-cv-906 (MPS), 2021 WL 4593611, at *2 (D. Conn. Oct. 6, 2021) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S 206, 209 (1998) (ADA "includes State prisons and prisoners within its coverage")). Thus, the issue is whether Plaintiff has been discriminated against because of his disability.

There are three theories an individual may use to establish the third element of an ADA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009); *see also*

*Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (explaining that the ADA requires that "covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities" (citation omitted)).   Plaintiff alleges that Captain Blackstock failed to make a reasonable accommodation to address his medical needs.

The ADA is intended "to ensure evenhanded treatment between the disabled and the able-bodied."   *Green v. Maldonodo*, No. 3:17-cv-00957 (CSH), 2017 WL 3568662, at *4 (D. Conn. Aug. 17, 2017) (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (internal quotation marks omitted).   The ADA "do[es] not guarantee any particular level of medical care for disabled persons, nor assure maintenance of service[s] previously provided."   *Cercpac v. Health & Hosp. Corp.*, 147 F.3d 165, 168 (2d Cir. 1998); *Reese v. Breton*, No. 3:18-cv-1465 (VAB), 2020 WL 998732, at *5 (D. Conn. Mar. 2, 2020) (ADA does not apply "to claims regarding the adequacy or substance of services provided by correctional departments or provide[] a remedy for medical malpractice" (collecting cases)).   "Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability."   *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010).   To sustain a claim for a reasonable accommodation, Plaintiff must show that his disability "makes it difficult for [him] to access benefits that are available to both those with and without disabilities."   *Henrietta D. v. Bloomberg*, 331 F.3d 261, 277 (2d Cir. 2003).

Plaintiff does not identify any activity or program he was unable to participate in because of his disability.   Instead, he was seeking medical treatment, a medical mattress, through his ADA request.   As the ADA does not guarantee medical care of the prisoner's choosing, Plaintiff fails to state a cognizable ADA claim.   *See, e.g., Schnauder v. Gibens*, 679 F. App'x 8, 11 (2d Cir. 2017)

(summary order) (affirming dismissal of inmate's ADA claim for failure to show discrimination based on disability because inmate's disability "was not the reason he was unable to access medical services; rather, it was the reason he sought such services"); *Sherman v. Cook*, No. 3:20-CV-1485 (SRU), 2021 WL 311283, at *5 (D. Conn. Jan. 29, 2021) (dismissing ADA claims based on treatment of inmate's shoulder condition because claims were "based on a lack of access to adequate medical care, not denial of access to programs or services available to non-disabled persons, or discrimination on the basis of disability").  The ADA claim against Captain Blackstock is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## ORDERS

Based on the foregoing, the Court issues the following orders:

Plaintiff may proceed with his individual and official capacity claims for deliberate indifference to medical needs against Officer Capega, Nurse Ortiz, Nurse Serwah-Konadu, and Nurse Cruz, and with his individual capacity claim for retaliation against Nurse Cruz.

The Court DISMISSES, pursuant to 28 U.S.C. § 1915A(b)(1), all claims against Defendants Rodriguez, Fleeting, Shea, Gallagher, and Blackstock.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1)  If Plaintiff wishes to proceed immediately **only** on the claims set forth above against Defendants Capega, Ortiz, Serwah-Konadu, and Cruz, he may do so without further delay.  If Plaintiff selects this option, he shall file a notice on the docket on or before **July 1, 2024**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph.  The Court will then begin the effort to serve process on Defendants named above in their individual and official capacities as described above.

(2)  Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **July 1, 2024.  An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any Amended Complaint.**  The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any Defendant.

If the Court receives no response from Plaintiff by **July 1, 2024,** the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)(2) provides that he **MUST** notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at Hartford, Connecticut, this 31st day of May, 2024.

*/s Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE